## THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GCX Limited, *et al.*, | ) | Case No. 19-12031 (CSS) |
| | ) | |
| Debtors. | ) | |
| ——————————————————— | ) | |
| GCX Limited, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No.: 20-50624 (CSS) |
| | ) | |
| Standard Chartered Bank, | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————————— | ) | |

### <u>OPINION</u>

YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Michael S. Neiburg
M. Blake Cleary
Jaime Luton Chapman
Michael S. Neiburg
1000 North King Street
Wilmington, Delaware 19801
    -and-
BOIES SCHILLER FLEXNER UK LLP
Matthew Getz
Nicholas Turvey
5 New Street Square London, EC4A 3BF UK

Counsel for Debtor-Plaintiff GCX Limited

POTTER ANDERSON &
CORROON, LLP
Katherine Good
1313 N. Market Street, 6th Floor
Wilmington, DE  19801
        -and-
BAKER & MCKENZIE LLP
Debra A. Dandeneau
Charles Cummings
Blaire A. Cahn
452 Fifth Avenue
New York, NY  10018

Counsel for Defendant Standard
Chartered Bank

Dated: November 30, 2021

Sontchi, J. _____

## INTRODUCTION

Before the Court are two motions: (i) Standard Chartered Bank's ("SCB") Motion to Dismiss the Complaint[1] (the "Motion to Dismiss") and (ii) Plaintiff's[2] Cross-Motion for Entry of an Order Alternatively Authorizing a Limited Period of Jurisdictional Discovery and Granting Related Relief[3] (the "Cross-Motion").  The Court heard oral argument on these motions on May 6, 2021 and took them under advisement.  The Motion to Dismiss seeks dismissal for lack of personal and *in rem* jurisdiction and, in the alternative, dismissal of the case on *forum non conveniens* grounds.  In addition, the Motion to Dismiss seeks dismissal of the constructive fraudulent transfer claims (Counts III and IV of the Complaint) for violating the presumption against extraterritoriality.  Plaintiff opposes SCB's Motion to Dismiss in its entirety and, in its Cross-Motion, seeks jurisdictional discovery.

Accordingly, the issues presented are whether: (i) this Court has *in personam* or *in rem* jurisdiction over SCB (or whether Plaintiff should be afforded jurisdictional discovery prior to this determination); (ii) this action should be dismissed under the doctrine of *forum non conveniens*; and (iii) Plaintiff's fraudulent transfer claims violate the presumption against extraterritoriality.

---

[1] Adv. D.I. 13

[2] The Court will refer to GCX Limited as "GCX" or "Plaintiff," interchangeably.

[3] Adv. D.I. 30

The Court will grant the Motion to Dismiss under the doctrine of *forum non conveniens* and will deny the Cross Motion. The balance of the arguments in the Motion to Dismiss are moot.

## JURISDICTION AND VENUE

Although the parties disagree as to whether the Court has personal jurisdiction over SCB, the parties do not contest that the Court has subject matter jurisdiction, pursuant to 28 U.S.C. §§ 157 and 1334, and that venue is proper before the United States Bankruptcy Court for the District of Delaware, pursuant to 28 U.S.C. § 1409(a).[4] The parties consent to the entry of final orders or judgments.[5]

## STATEMENT OF FACTS

### A.  General Background

The Debtors[6], together with their non-debtor affiliates, are a "leading global data communications services provider, operating one of the world's largest fiber networks."[7] After experiencing financial challenges, on September 15, 2019 (the "Petition Date"), the Debtors and certain of its affiliates filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

The Debtors' stated purpose in filing for bankruptcy was to implement a Restructuring Support Agreement (the "RSA") executed between the Debtors, their non-

---

[4] *See id.* n. 6.

[5] *See* Adv. D.I. 14, n. 2; *see also* Adv. D.I. 1, ¶ 8.

[6] The Complaint which is the subject of this opinion was filed solely on behalf of Debtor GCX Limited.

[7] Adv. D.I. 1, ¶ 12.

3

debtor affiliates, and an ad hoc group of Senior Secured Noteholders holding more than 88% of Senior Secured Notes, which would eliminate USD $150 million in prepetition bond debt and pay unsecured creditors in full.[8]  The Debtors and their non-debtor affiliates entered into the RSA because they were unable to refinance their sole funded debt obligation[9] of approximately USD $366 million of 7.00% Senior Secured Notes, which were issued under a Senior Secured Notes Indenture[10], dated August 1, 2014.[11] Pursuant to the RSA, the Senior Secured Noteholders agreed to vote in favor of the Debtors' *Joint Prepackaged Chapter 11 Plan of GCX Limited and Its Debtor Affiliates*.[12]

The dispute at the core of this Adversary Proceeding is centered around a USD $700 million Facility Agreement between non-debtor RGBV (as borrower) and SCB (as lender), dated June 22, 2010 (amended and restated on June 30, 2015) (the "Facility Agreement").[13]  RGBV pledged GCX's equity and the stock of GCX's direct parent, non-debtor GCXL, as collateral under the Facility Agreement.  It is undisputed that GCX is not a borrower under the Facility Agreement, nor did GCX guarantee RGBV's obligations under the Facility Agreement.[14]  In fact, GCX was released from any liability (including

---

[8] *Id*. ¶ 14.

[9] *See infra* n. 20.

[10] Adv. D.I. 1, ¶ 56. GCX issued USD $350 million of Senior Secured Notes on August 1, 2014.

[11] *Id*. ¶ 16. The cash held in GCX's bank account at SCB served as collateral for the Senior Secured Notes.

[12] *Id*. ¶ 15.

[13] GCX is a wholly owned subsidiary of GCXL, which is a wholly owned subsidiary of RGBV. The majority of RGBV is owned by RCOM, a publicly listed company in India, which filed for bankruptcy in India in 2019.

[14] *See* Adv. D.I. 63 (May 6, 2021 Hearing Transcript ("Hr'g Tr."), at 26:5-10).

4

guarantees) in connection with the Facility Agreement by way of a Deed of Release dated August 1, 2014 (the "Release").[15]

Citing RCOM's financial distress, RGBV defaulted under the Facility Agreement, with approximately USD $13.56 million in interest and principal outstanding on the Petition Date.[16]  On July 31, 2019, one day before GCX was due to make payment on the Senior Secured Notes[17], SCB seized USD $10,172,238.34 from GCX's account, the Funds purportedly due to SCB as a result of RGBV's default under the Facility Agreement (the "Funds").[18]  According to GCX, SCB does not hold a security interest in any property of GCX, including the account from which it seized the Funds.[19]  SCB did not foreclose on the equity of GCX that was pledged by RGBV.[20]  GCX argues that, had SCB not seized the Funds, they would constitute property of the estate and be available to distribute to the Debtors' creditors.

---

[15] Adv. D.I. 16, Stark Decl., Ex. F. § 2(a)(i) states, "the Agent and the Security Trustee unconditionally and irrevocably release each Guarantor from all liabilities arising under the guarantee and indemnity given by each Guarantor … of the Facility Agreement, without prejudice …."

[16] Adv. D.I. 1, ¶ 32.

[17] *Id.* ¶ 34. The Senior Secured Notes' Maturity Date was August 1, 2019.

[18] Hr'g Tr. 26:15-21. According to GCX, in early 2019, there were ongoing negotiations between itself and a private lender where GCX proposed to eliminate RGBV's debt to SCB as a condition of refinancing the Senior Secured Notes since GCX's equity had been pledged as collateral. This refinancing was supposed to occur on July 31, 2019, but, on July 24, 2019, the lender decided not to proceed with the proposed refinancing and gave a press release on July 25, 2019, informing the public of its decision not to proceed.

[19] Adv. D.I. 1, ¶ 28.

[20] *Id.* ¶ 27.

5

SCB argues that its seizure of the Funds was a lawful triangular set-off pursuant to the "Standard Terms"[21] contained in the Account Application GCX executed on July 15, 2014 when opening its English bank account at SCB (the "Account Application").[22] While acknowledging the Release, SCB argues that "[t]he Release did not affect any rights or security concerning GCX that were granted to SCB … under other agreements not named in the Release – including the setoff rights in clause 13.1 of the Standard Terms …."[23]

Accordingly, the main and ultimate issue presented by this Adversary Proceeding is whether SCB's seizure of the Funds was unlawful such that the Funds are property of the Debtors' estate.[24]

### B. Facts and Arguments Pertinent to the Doctrine of *Forum Non Conveniens*

GCX is a Bermudan company with its principal place of business in Bermuda.[25] SCB is incorporated and headquartered in England, with branches around the world.[26] The Account Application provides that English law governs the contractual relationship

---

[21] SCB relies on the "Standard Terms" in clause 13.1 of the Account Application, which provides, in pertinent part,

> [SCB] may set-off any amount [GCX] or any of [GCX's] Affiliates owe [SCB] … against any amount [SCB] owe[s] [GCX] … or any amount in any Account [GCX] hold[s] with [SCB].

[22] Adv. D.I. 14, ¶ 7. On July 15, 2014, GCX executed an Account Application and requested that SCB open an English bank account for GCX.

[23] *Id.* ¶ 12.

[24] The parties have not briefed the merits of this issue for purposes of these Motions and, thus, the Court offers no opinion on the issue.

[25] Adv. D.I. 1, ¶ 9.

[26] Adv. D.I. 14, ¶ 4. SCB has five locations in the United States, including a branch in New York and in San Francisco.

between SCB and GCX and further provides that English courts will decide disputes concerning GCX's account with SCB.[27]  The Facility Agreement and its related documents are also governed under English law.  Indeed, the Facility Agreement contains a Forum Selection Clause, which provides that the courts of England have "exclusive jurisdiction" over disputes in connection with the Facility Agreement. [28]

With respect to SCB's seizure of the Funds, although SCB argues that the "act of debiting" occurred in the United Kingdom, GCX contends that SCB used its New York branch[29] as an intermediary for foreign transactions, including processing bookkeeping entries with respect to its seizure of the Funds.[30]  Specifically, GCX argues that "SCB's utilization of its New York branch … was a necessary vehicle by which [SCB] took GCX's funds and funneled it through the United States on purpose and deliberately to pay down debts that were owed by non-debtor RGBV…."[31]

---

[27] Adv. D.I. 1, ¶ 36, n. 5 ("The law stated to govern the Standard Terms, under which GCX and SCB conducted business, is the law of the jurisdiction in which the account services were to be provided. As the account services were in respect of an English account, English law governs the contract and the relevant relationship."); *see also* Adv. D.I. 16, Stark Decl., Ex. A. § 18.2 ("The parties submit to the non-exclusive jurisdiction of the courts of the jurisdiction whose governing law applies.").

[28] Adv. D.I. 16, Stark Decl., Ex. B, § 12. The Facility Agreement provides that, "[t]his Agreement and any … obligations arising out of or in connection with it are governed by English law." The Facility Agreement also provides that, "[t]he courts of England have exclusive jurisdiction to settle any dispute arising out of or in connection with this Agreement." As noted previously, the parties do not dispute that GCX was released from liability under the Facility Agreement and, thus, the Forum Selection Clause contained within the Facility Agreement does not alter the Court's *forum non conveniens* analysis. Indeed, SCB argues that it is the Account Application which gave it the authority to effectuate the triangular set-off, not the Facility Agreement.

[29] Hr'g Tr. 30:5-6. SCB's London and New York branches are the same legal entity.

[30] Adv. D.I. 30, ¶. 4.

[31] Hr'g Tr. 24:22-25:1.

At oral argument, counsel for SCB explained that there were "two automated computer transactions that took, in total, less than 10 seconds to complete," and that these "bookkeeping entries were processed through SCB's New York branch because they involved U.S. dollars."[32]  According to SCB, the bookkeeping entries "happened after the debiting of the account and only so that SCB could effectively transfer funds from SCB to its Hong Kong and Singapore affiliates."[33]

That being said, SCB argues that none of the complained of acts occurred in the United States such that this case should be dismissed under the doctrine of *forum non conveniens*.  Specifically, among other things, SCB argues that it is an English bank, the bank account at issue and the parties' relationship is governed under English law, the act of debiting occurred in England, and the validity of the triangular set-off is similarly governed under English law.  Also, SCB argues that all potential witnesses are located in England and that English courts would undisputedly have jurisdiction over SCB (unlike here where jurisdiction is at issue).

In response, GCX asserts that, as a debtor in bankruptcy, its choice of forum is entitled to substantial deference under the "home court" presumption.  To that end, GCX argues that its choice of forum, where its bankruptcy case was commenced, should not be disturbed.  Also, GCX argues that it would incur additional expenses litigating this

---

[32] *Id*. at 12:8-19.

[33] *Id*. at 12:19-23.

dispute in England and that, for the benefit of judicial economy, this matter should

remain with this Court under centralized management along with its bankruptcy cases.

## STANDARD OF REVIEW

As discussed in the Introduction, although SCB raises a threshold jurisdictional

issue, the Court will "bypass that issue and instead address [SCB's] argument that this

case should be dismissed on the grounds of *forum non conveniens*."[34]

"The doctrine of *forum non conveniens* is a discretionary device permitting a court

… to dismiss a [case] even if the court is a permissible venue with proper jurisdiction over

the [case]."[35] "Determinations of *forum non conveniens* … are not solely questions of law.

Rather, they represent … discretion by trial judges appraising the practical

---

[34] *See Levien v. hibu plc*, 475 F.Supp.3d 429 (E.D. Pa. 2020) (dismissing case under the doctrine of *forum non conveniens* prior to determining personal jurisdiction because analyzing personal jurisdiction was a difficult task and the *forum non conveniens* factors weighed heavily in favor of dismissal); *see also Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007) (Supreme Court of the United States was tasked with determining whether a federal court can dismiss a case under the doctrine of *forum non conveniens* before ascertaining its own jurisdiction and held in the affirmative. "[W]here subject matter or personal jurisdiction is difficult to determine, and *forum non conveniens* considerations weigh heavily in favor of dismissal, the court property takes the less burdensome course."). In the case at bar, the Court finds that personal jurisdiction is onerous to determine. While it is likely that the Court lacks *in personam* jurisdiction given SCB's lack of minimum contacts with the United States, *in rem* jurisdiction is more difficult to ascertain because its determination is intertwined with the merits, i.e., whether the Court has *in rem* jurisdiction turns on whether SCB's seizure of the Funds was unlawful (and thus void), thereby possibly rending the Funds property of the estate over which the Court would have *in rem* jurisdiction. *See In re Hafen*, 616 B.R. 570, 578 (B.A.P. 10th Cir. 2020) (internal citations omitted) ("[A] bankruptcy court has jurisdiction over disputes regarding alleged property of the bankruptcy estate …."); *but see In re BMT-NW Acquisition, LLC*, 582 B.R. 846, 866 (Bankr. D. Del. 2018*)* (internal citations and quotations omitted) **(**explaining that "property which has been fraudulently or preferentially transferred before the bankruptcy filing … does not become property of the estate until it has been recovered by the estate."). Discovery concerning personal jurisdiction will burden the parties with expense and delay for a scant purpose given that the Court would inevitably dismiss this case under the doctrine of *forum non conveniens*.

[35] *In re Hellas Telecommunications (Luxembourg) II SCA*, 555 B.R. 323, 345 (Bankr. S.D.N.Y. 2016) (internal citations and quotations omitted).

inconveniences posed to the litigants and to the court should a particular action be litigated in one forum rather than another."[36]

The Third Circuit has articulated a three-part test for courts to use when analyzing motions to dismiss for *forum non conveniens*:

> First, the court must determine whether an adequate alternative forum can entertain the case. Second, if such a forum exists, the district court must … determine the appropriate amount of deference to be given to the plaintiff's choice of forum. Third, the district court must balance the relevant public and private interest factors.[37]

The requirement that there be an adequate alternative forum is generally satisfied when the defendant is amenable to process in the other jurisdiction.[38]  Once an adequate alternative forum is established, the focus shifts to the amount of deference due to a plaintiff's chosen forum.  "When the plaintiff is a domestic resident or citizen, a strong presumption of convenience exists in favor of the chosen forum."[39]  However, when the plaintiff "is foreign, this presumption applies with less force, because the assumption that the chosen forum is appropriate in such cases is less reasonable."[40]

After determining how much deference is due to the plaintiff's chosen forum, the last step in a *forum non conveniens* analysis is to weigh the public and private interest factors.

---

[36] *Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d. 604, 632 (3d Cir. 1991).

[37] *Levien*, 475 F.Supp. 3d at 438 (citing *Windt v. Quest Commc'ns Int'l, Inc.*, 529 F.3d 183, 189-190 (3d Cir. 2008)).

[38] *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981).

[39] *Levien*, 475 F.Supp. 3d at 442 (internal citations and quotations omitted).

[40] *Id.*

Public interest factors include:

> administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the state law that must govern the case; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.[41]

Private interest factors that courts may consider include "the ease of access to sources of proof; ability to compel witness attendance if necessary; means to view relevant premises and objects; and any other potential obstacle impeding an otherwise easy, cost-effective, and expeditious trial."[42]

The burden of persuasion as to all elements of the *forum non conveniens* analysis rests with the defendant.[43] Accordingly, the "defendant has the burden to establish that an adequate alternative forum exists and then to show that the pertinent factors tilt strongly in favor of trial in the foreign forum."[44]

## ANALYSIS

### 1. Availability of Adequate Alternative Forum

As noted, the availability of an adequate alternative forum "is generally satisfied when the defendant is amenable to process in [another] jurisdiction."[45] Stated otherwise,

---

[41] *Windt v. Quest Commc'ns Int'l, Inc.*, 529 F.3d 183, 189 (3d Cir. 2008).

[42] *Levein*, 475 F.Supp 3d at 446 (citing *Kisano Trade Invest Ltd. v. Lemster*, 737 F.3d 869, 873 (3d Cir. 2013)).

[43] *Lony*, 935 F.2d. at 609.

[44] *Hellas Telecommunications*, 555 B.R. at 345-46 (internal citations and quotations omitted).

[45] *Piper Aircraft Co.*, 454 U.S. at 254 n.22.

"[a]n alternative forum is ordinarily adequate if the defendant[ ] [is] amenable to service of process there and the forum permits litigation of the subject matter of the dispute."[46]

Here, England is an adequate alternative forum as SCB is incorporated and headquartered in England and maintains its principal place of business there.[47]   Thus, SCB is amenable to service of process in England.   Moreover, GCX concedes that SCB has shown that England is an adequate alternative forum and that it is amenable to service of process there.[48]   Accordingly, this factor weighs in favor of dismissal.

### 2.  Amount of Deference to Plaintiff's Choice of Forum

While a plaintiff's choice of forum is generally entitled to great deference, "the amount of deference due is less when the plaintiff is foreign."[49]   "[T]he reason for giving a foreign plaintiff's choice less deference is … merely a reluctance to assume that the choice is a convenient one."[50]   Thus, "the reluctance can readily be overcome by a strong showing of convenience."[51]

In the case at bar, GCX is a Bermudan and, thus, foreign plaintiff.   Nonetheless, GCX argues that this Court should afford its choice of forum substantial deference because it "chose to commence this adversary proceeding in Delaware, where the

---

[46] *Hellas Telecommunications*, 555 B.R. at 347.

[47] Adv. D.I. 15, Mellor Decl., ¶¶ 4-5; *see also* Adv. D.I. 15, Mellor Decl., Ex. A.

[48] *See* Hr'g Tr. 34:9-10 ("GCX cannot contest that London on [sic] an English court would be an adequate forum, but that is just simply part of the analysis.").

[49] *Lony*, 935 F.2d at 633.

[50] *Id.* at 634.

[51] *Id.*

Debtors' chapter 11 bankruptcy cases remain pending, thereby [streamlining] case administration."[52]

The cases cited by GCX to support its position are distinguishable from the facts here. GCX cites *In re Herchinger Inv. Co. of Del., Inc.*[53] to stand for the proposition that "[t]here is a strong presumption in favor of maintaining venue where the bankruptcy case is pending." While true[54], the plaintiff in *Herchinger* was a Delaware corporation, not a foreign plaintiff. Accordingly, the general rule that affords a plaintiff's choice of forum substantial deference was applicable there, unlike here, where GCX is a foreign plaintiff. The same can be said for GCX's reliance on *In re Permalife Prods., LLC*,[55] where all of the plaintiffs were domestic limited liability companies, not foreign plaintiffs.

GCX also cites *In re Sherwood Invs. Overseas Ltd., Inc.*[56] There, the plaintiff was a British Virgin Islands corporation with its principal place of business in Tortola, British Virgin Islands.[57] The defendant had acquired certain business units from a bank incorporated in the Netherlands with a branch in London, England and maintained a securities investing and trading relationship with the plaintiff (who already had a commercial relationship with the Dutch bank). The plaintiff commenced an adversary proceeding against the defendant after losing the entirety of its investment, and the

---

[52] Adv. D.I. 30, ¶ 46.

[53] 288 B.R. 398 (Bankr. D. Del. 2003).

[54] *See Hopkins v. Plant Insulation Co.*, 342 B.R. 703, 715 (D. Del. 2006).

[55] 432 B.R. 503 (Bankr. D.NJ. 2010).

[56] 442 B.R. 834 (Bankr. M.D. Fla. 2010).

[57] *Id.* at 835-36.

defendant moved to dismiss the proceeding for *forum non conveniens*, arguing that London was the appropriate forum to determine the dispute.

The Court, in denying the defendant's *forum non conveniens* motion, found that there were "not enough facts that weigh in favor of dismissal to overcome the "home court presumption" and that dismissal would unduly prejudice the debtor."[58]  In so holding, the Court considered the fact that the plaintiff would have to hire London counsel, that the parties conducted "at least half of all their business in Florida," such that the pertinent documents and records were in Florida, and ultimately found that there were "at least enough private interest factors that weigh in favor of retaining the case in Orlando."[59]

Accordingly, on balance, the Court found that there were not enough facts to overcome the "home court" presumption.  Here, in contrast, the Court's balance of factors supports a different conclusion.  As will be discussed in greater detail below, all the transactions occurred in England, the governing documents as well as the parties' relationship are governed under English law, which English courts are better suited to analyze, the validity of the triangular set-off is governed under English law, there are no witnesses or evidence located in the United States, and the parties did not conduct any of their business in the United States.

---

[58] *Id*. at 838.

[59] *Id*.

14

Indeed, the only act which occurred in the United States was SCB's utilization of its New York branch to conduct a ten-second transaction to process bookkeeping entries to adjust debt owed to SCB's Singapore and Hong Kong affiliates.  Nevertheless, the Funds were seized in England and only processed through SCB's New York branch because the Funds involved U.S. dollars and so that SCB could transfer the Funds to its Hong Kong and Singapore affiliates.  SCB's adjustment of the Singapore and Hong Kong accounts through the use of its New York branch does not amount to the parties "conducting business" in the United States.

Moreover, unlike in *Sherwood*, where the plaintiff would have had to hire London counsel, "GCX's primary counsel in this action is based in England."[60]  Thus, there are enough facts to overcome the "home court" presumption under the circumstances presented.  Accordingly, GCX's choice of forum is afforded little deference because it is a foreign plaintiff and the balance of private and public interest factors overcome the "home court" presumption.

### 3.  Balance of Public and Private Interest Factors

"In determining whether the doctrine of *forum non conveniens* should be applied, a court should … consider factors of public interest and the private interests of the litigant."[61]  A balancing of these factors must "tilt heavily in favor of the alternative

---

[60] Hr'g Tr. 23:1-2.

[61] *In re National Bank of Anguilla (Private Banking Trust) Ltd.*, 580 B.R. 64, 88 (Bankr. S.D.N.Y. 2018) (internal citations and quotations omitted); *see also Trotter v. 7R Holdings, LLC*, 873 F.3d 435, 68 V.I. 818, 828 (3d Cir. 2017).

forum."[62]  "If, when added together, the relevant private and public interest factors are in equipoise, or even if they lean only slightly toward dismissal, the motion to dismiss must be denied."[63]

### a. Public Interest Factors

The public interest factors relevant to this matter[64] are the "local interest in having localized controversies decided at home," the "avoidance of unnecessary problems in conflict of laws or in the application of foreign law," and "any other burdens imposed on the forum."[65]  "To evaluate these factors, the court must consider the locus of the alleged culpable conduct … and the connection of that conduct to the plaintiff's choice of forum."[66]

The "locus" of the alleged culpable conduct is, without a doubt, England. The fact that the Funds flowed through SCB's New York branch does not make the United States the "locus" of the alleged culpable conduct when it is undisputed that the seizure and debiting of the Funds occurred in England.

Also, England has the stronger local interest in having localized controversies decided there.  SCB is an English bank, and its seizure of the Funds has to do with an English bank account governed by the Account Application which, in turn, is governed

---

[62] *Id.*

[63] *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 180(3d Cir. 1991).

[64] *See Van Cauwenberghe v. Biard*, 486 U.S. 517, 528-29 (1988) ("The list of considerations to be balanced is by no means exhaustive, and some factors may not be relevant in the particular case.").

[65] *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947).

[66] *Van Cauwenberghe*, 486 U.S. at 528.

by English law.  Accordingly, it is logical to conclude that England has the stronger interest in governing activities conducted by English banks.

Furthermore, while the parties agree that English law governs their relationship, the terms of the Account Application, and the validity of the triangular set-off, there is nevertheless the reality that this Court will be applying foreign law with which it is unfamiliar and with which an English court will be comfortable without the need for expert testimony.

Moreover, the need for expert testimony with respect to English law will add unnecessary expense and burden to the parties which they need not incur should this matter be litigated in an English court.

Thus, the balance of public interest factors weighs in favor of dismissing this case.

  **b.  Private Interest Factors**

As discussed, private interest factors include "the relative ease of access to sources of proof," the "availability of compulsory process for attendance of unwilling … witnesses," the "cost of obtaining attendance of willing witnesses," the "enforceability of the judgment," and "all other practical problems that make trial of a case easy, expeditious and inexpensive."[67]

Here, all the private interest factors weigh in favor of dismissing this case and having the parties litigate this dispute in an English court.  First and foremost, all the sources of proof along with all witnesses are in England.  The Account Application and

---

[67] *Gulf Oil Corp.*, 330 U.S. at 508-09.

all of its accompanying documents were executed by or with the help of people in England, concern an English bank and bank account, and the terms and the implication of those terms is governed by English law. That being so, continuing this litigation here will likely require expert testimony with respect to English law, which would, of course, not be necessary in England. Accordingly, hiring experts to testify as to English law would create an unnecessary expense which the parties would not incur if litigating in England.

The availability of compulsory process for attendance of unwilling witnesses is unlikely to be a difficult task in England, where the potential witnesses are located, but a huge impediment in the United States where the Court cannot even compel the presence of witnesses located in other states let alone other countries.

Accordingly, the balance of private interest factors weighs heavily in favor of dismissal.

<u>CONCLUSION</u>

All of the relevant factors support dismissing this adversary proceeding under forum *non conveniens.* Thus, the Motion to Dismiss will be granted and the Cross Motion will be denied. The remaining issues raised in the Motion to Dismiss are moot. An order will be entered.